# Exhibit 2

This case has been designated as an eFiling case to review a copy of the Notice of Mandatory eFiling visit www.oakgov.com/clerkrod/Pages/efiling.

| | | | | 3rd copy - Return |
| --- | --- | --- | --- | --- |

**STATE OF MICHIGAN**

JUDICIAL DISTRICT
6th JUDICIAL CIRCUIT
COUNTY PROBATE

**SUMMONS AND COMPLAINT**

CASE NO.
2016-152236-CB

| Court address | Court telephone no. |
| --- | --- |
| 1200 N Telegraph, Pontiac MI 48345 | 248 858 1000 |

| Plaintiff's name(s), address(es), and telephone no(s). | v | Defendant's name(s), address(es), and telephone no(s). |
| --- | --- | --- |
| KVG Properties, Inc. | | Westfield Insurance Company |
| | | 2851 Charlevoix Dr., SE Ste 340 |
| | | Grand Rapids, MI 49545 |

| Plaintiff's attorney, bar no., address, and telephone no. |
| --- |
| Gavin J. Fleming (P68366) |
| 1615 S. Telegraph, Suite 300 |
| Bloomfield Hills, MI 48302 |
| (248) 231-9594 |

**SUMMONS** | **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires | Court clerk |
| --- | --- | --- |
| MAR 29 2016 | JUN 28 2016 | Lisa Brown |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** | Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
| --- | --- | --- |

**General Civil Cases**

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
| --- | --- | --- |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
| --- | --- |
| Oakland County | Kent County |

| Place where action arose or business conducted |
| --- |
| Oakland County |

| March 29, 2016 | (P68366) |
| --- | --- |
| Date | Signature of attorney/plaintiff |

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| PROOF OF SERVICE | SUMMONS AND COMPLAINT |
|---|---|
| | Case No.    2016-152230-CB |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:    (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:    (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

       List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Mileage fee $ | Total fee $ | Signature _____ |
|---|---|---|---|---|

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                  Date

My commission expires: _____ Signature: _____
              Date                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                     Attachments

_____ on _____
                                      Day, date, time

_____ on behalf of _____

Received for Filing Oakland County Clerk 2016 MAR 29 AM 11:04

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

K.V.G. PROPERTIES, INC.,
a Michigan Corporation,

        Plaintiff,

vs.

WESTFIELD INSURANCE
COMPANY,

        Defendant.

Case No 2016-152230-CB
Hon.   JUDGE POTTS

**ELIGIBLE BUSINESS COURT FILING PURUANT TO MCLA 600.8031**

_____/

FLEMING YATOOMA & BOROWICZ PLC
Gavin J. Fleming (P68366)
Attorney for Plaintiff, KVG
1615 S. Telegraph Rd, Suite 300
Bloomfield Hills, MI 48302
248-231-9594
fleming@fyblaw.com

_____/

## COMPLAINT AND JURY DEMAND

    NOW COMES Plaintiff, K.V.G. Properties, Inc. ("KVG"), by and through its attorneys,

Fleming Yatooma & Borowicz PLC and for its Complaint and Jury Demand states:

### PARTIES, JURISDICTION, AND VENUE

    1.     KVG is a Michigan Corporation doing business in Wixom, County of Oakland,

State of Michigan.

    2.     Westfield Insurance Company ("Westfield") is a foreign insurance company

doing business in Oakland County, Michigan.

    3.     The amount in controversy exceeds $25,000.00, exclusive of attorney fees and

costs.

    4.     This Court has jurisdiction over the parties.

5.     Venue is proper in this Court because both parties do business in Oakland County, Michigan.

## GENERAL ALLEGATIONS

6.     This case arises out of Westfield's failure to provide insurance coverage to KVG under Policy Number CWP 3449419 ("the Policy"). *See* Policy, Ex. A.

7.     The Policy covers, among other things, loss or damage to three light industrial buildings that KVG owns: 42910 W. 10 Mile Road, Novi MI; 42916 W. 10 Mile Road, Novi MI; and 42920 W. 10 Mile Road, Novi MI (the "Covered Properties").

8.     At the outset, according to page one of the Renewal General Liability Endorsements, there is a general, aggregate policy limit of $4,000,000.00.

9.     According to the Declaration Page prepared for the lender holding a mortgage on the Covered Properties, First Place Bank, there is a $785,500.00 limit for each building.

10.    Under the Declaration/Proof of Insurance, a Covered Cause of Loss is means Risks of Direct Physical Loss unless the the loss is excluded or limited.

11.    On or about October 29, 2015, KVG discovered damage to the Covered Properties, which is described in the attached repair estimate. *See* Estimate, Ex. B.

12.    More specifically, tenants occupying units in the Covered Properties damaged the units by, among other things, attempting to grow marijuana in their units and thereby damaging the interior of their units, other units, and the HVAC system. *See id.*

13.    The estimated cost of remediation is $418,161.48.

14.    After discovering the damage, KVG immediately reported the issue to Westfield.

15.    Westfield investigated the claim and declined coverage on January 8, 2016. *See* 1/8/16 Letter, Ex. C.

16.     A fair reading of the letter provides KVG with meager guidance as to why Westfield is denying coverage. Rather, Westfield simply recites portions of the insurance policy and provides no rationale for its decision.

17.     Given the vague response from Westfield, Jeff Hamlin, insurance agent for KVG, asked Westfield to reconsider its position.

18.     As such, on February 22, 2016, Westfield issued a second letter declining coverage. *See* 2/22/16 Letter, Ex. D.

19.     The February 22, 2016 letter is equally vague and concludes:

> [T]he losses being sought are not fortuitous but were caused by a foreseen business risk of loss where the parties allocate risk and liability upon the tenant and were caused by and/or the result of excluded causes of loss.

20.     While the letter recites portions of the Policy, at no point does it tell KVG why the claim is being denied.

21.     Westfield fails, at any point, to provide *any analysis* to KVG as to why the claim is excluded.

22.     The rationale regarding the "risk of loss" is equally perplexing because such language is not found in the Policy.

23.     Westfield simply issued a blanket statement of denial, which is the epitome of bad faith.

24.     Westfield's claim that the loss is excluded is meritless because the loss was caused by damage to units and other areas in the Covered Properties and the HVAC systems, which does not fall under any of the exclusions listed in the February 22, 2016 letter.

25.     KVG now claim it has coverage for all losses sustained on October 29, 2015 and requests that this Honorable Court declare that the Policy covers the losses at issue.

3

26.     As this Court is aware, growing marijuana is not illegal in the State of Michigan.

27.     Further, while non-lawyers used the term "vandalism" in the insurance claim documents to describe damage to property, KVG did not use the term as it is defined in the Michigan Criminal Code—i.e., "the willful or malicious destruction, injury, disfigurement, or defacement of any public or private property, real or personal, without consent of the owner or person having control."

28.     Rather, the issue raised in the insurance claim was for damage to property by a tenant, a loss that KVG clearly contemplated would be covered under the Policy.

29.     This lawsuit followed.

### COUNT I—DECLARATORY RELIEF

30.     KVG incorporates the allegations set forth in paragraphs 1-29 by reference as if fully set forth herein.

31.     Under MCR 2.605, where, as here, there is an actual controversy, this Court may declare the legal rights and duties of the parties.

32.     There is an actual controversy between KVG and Westfield about whether the October 29, 2015 damage to the Covered Properties is covered under the Policy.

33.     Based on the facts and circumstances of this case, KVG has presented sufficient facts and evidence for the issuance of a declaratory judgment in its favor.

WHEREFORE, KVG seeks a declaratory judgment in its favor finding that the losses described above are covered under the Insurance Policy, an award of damages in excess of $400,000.00 for the remediation and loss of rental income, its attorney fees and costs, and an award of any further relief the Court deems equitable and just.

4

## COUNT II—BREACH OF CONTRACT

34.     KVG incorporates the allegations set forth in paragraphs 1-33 by reference as if fully set forth herein.

35.     The Policy and the attendant documents constitute a valid and binding contract under Michigan law.

36.     KVG performed under the contract by paying its premiums and otherwise complying with the terms and conditions of the contract.

37.     Westfield breached the contract by failing to cover the losses described above.

38.     As a direct and proximate result, KVG has suffered incidental, actual, and consequential damages, including lost rents.

WHEREFORE, KVG respectfully requests that this Honorable Court grant a judgment in its favor in excess of $400,000.00, award KVG its attorney fees and costs, and an award of any further relief the Court deems equitable and just.

Respectfully submitted,

FLEMING YATOOMA & BOROWICZ PLC

/s/ Gavin J. Fleming
Gavin J. Fleming (P68366)
Attorneys for KVG
1615 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 231-9594

Dated: March 29, 2016

5

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable and asserts its right to a trial by a jury on Count I of the Complaint under MCR 2.605(B).

Respectfully submitted,

FLEMING YATOOMA & BOROWICZ PLC

/s/ Gavin J. Fleming
Gavin J. Fleming (P68366)
Attorneys for KVG
1615 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
(248) 231-9594

Dated: March 29, 2016

EXHIBIT A

GRIFFIN SMALLEY & WILKERSON
37000 GRAND RIVER  STE 150
PO BOX 2999
FARMINGTON HILLS, MI  48333-2999

248-471-0970

Policy Number:  **CWP 3449419**

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI  48393

## Assembly Instructions

These pages update your current policy.  To keep it current, you should:

1.  Check the upper right hand corner of each page in this packet.

    a.  If it says "Renewal or Rating Period Declarations", **remove** the
        expired declarations page from your current policy and **replace**
        it with the updated "Renewal or Rating Period Declarations"
        page.

    b.  If it says "Amended Declarations", insert this amended page **on
        top** of the last declarations page you received.

2.  Every time you receive a "Renewal or Rating Period Declarations",
    **remove** all prior "Amended Declarations".

3.  When you remove pages from your policy, retain them for a perma-
    nent record.

Thank you for placing your business with us!



W E S T F I E L D
I N S U R A N C E
Sharing Knowledge. Building Trust.®

P.O. Box 5001, Westfield Center, Ohio  44251-5001

CRP2117 (08-10)

**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

**COMMERCIAL PACKAGE POLICY**
**RENEWAL**
**COMMON POLICY DECLARATIONS**

43

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY |
|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI 48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

**Policy Number:** CWP 3 449 419 |11|   **WIC Account Number:** 2170002239 | Q

| Policy Period | From 01/30/15 To 01/30/16 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|

**Business:** OFFICE COMPLEX                    **Named Insured is:** Corporation

In return for the payment of the premium, and subject to all terms of this policy, we agree with you to provide the insurance as stated in this policy.

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS

| | |
|---|---|
| COMMERCIAL PROPERTY COVERAGE PART | $ 3,391.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ 882.00 |
| COMMERCIAL AUTO COVERAGE PART | $ 140.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | Included |
| CRIME AND FIDELITY COVERAGE PART | Included |
| COMMERCIAL UMBRELLA COVERAGE PART | $ 500.00 |
| TERRORISM INSURANCE COVERAGE | $ 198.00 |

Policy Annual Premium                       $    5,111.00

Total Advance Annual Policy Premium         $    5,111.00

The above is a summary of your coverages. For more detail, please refer to the individual coverage parts inside your policy.

**Forms and Endorsements applicable to all coverage parts:**
IL0019    0488 , IL0017    1198 , ID7004    0411 , IL0003    0908 .

COUNTERSIGNED: _____ BY _____
                        Date                          Authorized Representative



## WESTFIELD INSURANCE
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**COMMERCIAL PROPERTY DECLARATIONS**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | | |
|---|---|---|---|---|
| **NAMED INSURED AND MAILING ADDRESS** | **AGENCY** | 21-04048 | **PROD.** | 000 |

| NAMED INSURED AND MAILING ADDRESS | AGENCY / PROD |
|---|---|
| K V G PROPERTIES INC<br>28345 BECK RD STE 100<br>WIXOM MI 48393 | GRIFFIN SMALLEY & WILKERSON<br>PO BOX 2999<br>FARMINGTON HILLS MI 48333-2999<br>TELEPHONE 248-471-0970 |

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy Period | From 01/30/15<br>To 01/30/16 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|

**DESCRIPTION OF PREMISES**

| Loc Bldg | Address, City & state | Construction | Occupancy |
|---|---|---|---|
| 001 001 | 42910 W 10 MILE RD<br>NOVI, MI 48375 | Masonry Non-Combustible | OFFICE |
| 002 001 | 42916 W 10 MILE RD<br>NOVI, MI 48375 | Masonry Non-Combustible | OFFICE |
| 003 001 | 42920 W 10 MILE RD<br>NOVI, MI 48375 | Masonry Non-Combustible | OFFICE |

**COVERAGES PROVIDED - Insurance at the described premises applies only for coverages for which a limit of insurance is shown. OPTIONAL COVERAGES applicable only when entries are made in the schedules below:**

| Loc Bldg | Coverage | Coins | Infl. Guard | Repl. Cost | Limit of Insurance | Premium |
|---|---|---|---|---|---|---|
| 001 001 | Building<br>Cause of Loss: Special | 100% | N/A | Yes | $785,500 | $974 |
| 002 001 | Building<br>Cause of Loss: Special | 100% | N/A | Yes | $785,500 | $974 |
| 003 001 | Building<br>Cause of Loss: Special | 100% | N/A | Yes | $785,500 | $974 |

**OPTIONAL COVERAGES**

| Loc Bldg | Applicable to | Option Description | Premium |
|---|---|---|---|
| 001 001 | | Tier 1 Expanded Property Endt | $101 |
| 002 001 | | Tier 1 Expanded Property Endt | $76 |
| 003 001 | | Tier 1 Expanded Property Endt | $76 |

\* Exclusion Descriptions:
Thft = Theft,Spr = Sprinkler Leakage,Vand = Vandalism,Wind = Windstorm or Hail

| Equipment Breakdown Coverage Premium | $ | 216.00 |
|---|---|---|
| **Total Advance Annual Property Premium** | **$** | **3,391.00** |

**Mortgage Holder**

| Loc Bldg | | Loc Bldg | |
|---|---|---|---|
| 001 001 | FIRST PLACE BANK<br>ISAOA<br>24725 W 12 MILE RD<br>SOUTHFIELD, MI 48034 | 002 001 | FIRST PLACE BANK<br>ISAOA<br>24725 W 12 MILE RD<br>SOUTHFIELD, MI 48034 |
| 003 001 | FIRST PLACE BANK<br>ISAOA<br>24725 W 12 MILE RD<br>SOUTHFIELD, MI 48034 | | |

**Deductible is**     $500

**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**COMMERCIAL PROPERTY DECLARATIONS**
(Continued)

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|
| **NAMED INSURED AND MAILING ADDRESS** | **AGENCY** | 21-04048 | **PROD.** | 000 |

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI 48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

| Policy Number: CWP 3 449 419 | |11| | WIC Account Number: 2170002239 | | Q |
|---|---|---|---|

| Policy Period | From 01/30/15 To 01/30/16 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|

**Forms and Endorsements applicable to this coverage part:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CP0090 | 0788 , | IL0952 | 0308 , | IL0022 | 0587 , | CP0120 | 0108 , | CP0140 | 0706 , |
| CP7083 | 0408*, | CP7084 | 0408 , | CP1032 | 0808 , | CP7097 | 1113*, | CPDS00 | 1014*, |
| CP1030 | 0607 , | CP0010 | 0607 , | CP1218 | 0607*, | CP7023 | 1094 , | CP7096 | 1109 , |
| CP0415 | 1000 , | CP0405 | 0402 , | CP1230 | 0695 , | CP0407 | 1091 , | CP0440 | 0607 , |
| CP0417 | 0607 , | CP0401 | 1000 . | | | | | | |

PAGE  02 OF  02          CP DS 00 (10-14)          11/17/14          ORIGINAL



**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**COMMERCIAL PROPERTY EXPANDED COVERAGE**
**ENDORSEMENT - TIER 1 SCHEDULE**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | | |
|---|---|---|---|---|
| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI 48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy Period | From 01/30/15 To 01/30/16 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|

**COMMERCIAL PROPERTY EXPANDED COVERAGE**
**ENDORSEMENT - TIER 1 SCHEDULE**

This schedule modifies insurance provided under the

COMMERCIAL PROPERTY EXPANDED COVERAGE ENDORSEMENT - TIER 1

**LOCATION SCHEDULE**
Note: Crime Coverages included via CR 00 21 (or CR 00 25) apply on a
policy-level basis, including those locations/buildings not scheduled below.

| Loc. No. | Bldg. No. | Address, City & State |
|---|---|---|
| 001 | 001 | 42910 W 10 MILE RD, NOVI, MI 48375 |
| 002 | 001 | 42916 W 10 MILE RD, NOVI, MI 48375 |
| 003 | 001 | 42920 W 10 MILE RD, NOVI, MI 48375 |

**The limits listed in Section I below are the most we will pay for each coverage
in any one occurrence unless a different limit is listed in Section II below.**
(Refer to policy language for specific coverages, conditions and exclusions.)

**Section I**

| Coverage | Limit of Insurance |
|---|---|
| Accounts Receivable (CM 00 66) | |
|   Property At Your Premises | $25,000 |
|   Property Away From Your Premises | NIL |
| Backup of Sewers or Drains | $25,000 |
| Brands and Labels (CP 04 01) | Included |
| Business Income from Dependent Properties | $25,000 |
| Changes in Temperature | $1,000 |
| Computer Coverage | |
|   Hardware, Data and Media | $25,000 |
|   Laptops/Portable Computers and Software (away from premises) | $10,000 |
| Credit Card Invoices | $1,000 |
| Debris Removal - Additional Insurance (CP 04 15) | |
|   Building & Contents (Combined) | $50,000 |
| Deferred Payments | $25,000 |
| Employee Theft (CR 00 21) Or | |
| Employee Theft - Per Loss Coverage (CR 00 25) | $25,000 |
|   Deductible Amount Per Occurrence: | NIL |
| Extra Expense | $50,000 |
| Fine Arts (IM 74 00) | |
|   Max per item | $2,500 |
|   Catastrophe Limit | $10,000 |
|   Deductible: | NIL |
|   Breakage: | Breakage Exclusion Applies |
| Fire Department Service Charge | $10,000 |
|   (Virginia Includes Volunteer Fire Departments) | |
|   (Increased Limits Are Not Available For Arizona) | |



**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**COMMERCIAL PROPERTY EXPANDED COVERAGE**
**ENDORSEMENT - TIER 1 SCHEDULE**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY |
|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI  48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

| Policy Number: CWP 3 449 419 | |11| | WIC Account Number: 2170002239 | | Q |
|---|---|---|---|---|---|---|

| Policy Period | From | 01/30/15 | at 12:01 A.M. Standard Time at your |
|---|---|---|---|
| | To | 01/30/16 | mailing address shown above. |

| | |
|---|---|
| Fire Extinguisher Recharge Expense | Included |
| Forgery or Alteration (CR 00 21 or CR 00 25) | $25,000 |
|   Deductible Amount Per Occurrence: | NIL |
| Foundations of Buildings | Included |
| Inside the Premises - Theft of Money & Securities (CR 00 21 or CR 00 25) | $25,000 |
|   Deductible Amount Per Occurrence: | NIL |
| Outside the Premises (CR 00 21 or CR 00 25) | $25,000 |
|   Deductible Amount Per Occurrence: | NIL |
| Inventory and Appraisals | $10,000 |
| Lock Replacement | $2,500 |
| Newly Acquired or Constructed Property | |
|   Buildings | $1,000,000/180 days |
|   Business Personal Property | $500,000/180 days |
|   Business Income | 180 days |
| Ordinance or Law (CP 04 05) | |
|   Loss to undamaged portion of Building (if applicable) | Incl up to bld lmt |
|   Demolition Cost | $50,000 |
|   Increased Cost Of Construction | $50,000 |
| Outdoor Property | |
|   Any one tree, shrub or plant | $1,000 |
|   Any one occurrence | $10,000 |
| Outdoor Signs | $12,500 |
| Patterns, Dies, Molds, and Forms | $10,000 |
| Peak Season - Automatic Increase (CP 12 30) | |
|   Period (From/To): Annual Policy Period | Lesser of: 25% or $50,000 |
| Personal Effects and Property of Others | |
|   Any one person in any one loss | $5,000 |
|   Any one occurrence | $10,000 |
| Pollutant Clean Up and Removal (CP 04 07) | $25,000 |
|   Deductible: | NIL |
| Premises Boundary Increased Distance | 1,000 feet |
| Property in Transit | $20,000 |
| Property off Premises | $25,000 |
|   Max per salesperson | $10,000 |
| Reward Payment | |
|   Information | $10,000 |
|   Stolen Property | $10,000 |
| Spoilage includes Refrigeration Maintenance Agrmt, Selling Price, Breakdown Or Contamination and Power Outage (CP 04 40) | $10,000 |
|   Deductible: | $500 |



## WESTFIELD INSURANCE
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**COMMERCIAL PROPERTY EXPANDED COVERAGE**
**ENDORSEMENT - TIER 1 SCHEDULE**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY |
|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|

| K V G PROPERTIES INC<br>28345 BECK RD STE 100<br>WIXOM MI 48393 | GRIFFIN SMALLEY & WILKERSON<br>PO BOX 2999<br>FARMINGTON HILLS MI 48333-2999<br>TELEPHONE 248-471-0970 |
|---|---|

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy<br>Period | From  01/30/15<br>To    01/30/16 | at 12:01 A.M. Standard Time at your<br>mailing address shown above. |
|---|---|---|

Stamps, tickets, including lottery tickets held for sale, and letters of credit $500

Utility Services - Direct Damage (CP 04 17)
Building $10,000
   Includes: Water Supply Property
          Communication Supply Property (No Overhead
          Transmission Lines)
          Power Supply Property (No Overhead Transmission
          Lines)
Business Personal Property $10,000
   Includes: Water Supply Property
          Communication Supply Property (No Overhead
          Transmission Lines)
          Power Supply Property (No Overhead Transmission
          Lines)

Vacancy 11% Occupied

Valuable Papers and Records (CM 00 67)
   All Other Covered Property $25,000
   Property Away From Your Premises $5,000
   Deductible: NIL

If a limit is listed in Section II, that limit will supersede the limit in Section I for the designated coverage(s), location(s) and building(s) listed below.

If no limit is listed in Section II, there are no changes to Section I.

Note: If "All" is designated as the Loc. No./Bldg. No. Coverage applies to all locations, including those locations / buildings not scheduled.

**Section II**

| Loc.<br>No. | Bldg.<br>No. | Coverage | Limit of Insurance |
|---|---|---|---|



**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**GENERAL LIABILITY DECLARATIONS**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|
| K V G PROPERTIES INC<br>28345 BECK RD STE 100<br>WIXOM MI  48393 | GRIFFIN SMALLEY & WILKERSON<br>PO BOX 2999<br>FARMINGTON HILLS MI 48333-2999<br>TELEPHONE 248-471-0970 | | | |

**Policy Number:** CWP 3 449 419   |11|   **WIC Account Number:** 2170002239   | Q

| Policy Period | From | 01/30/15 | at 12:01 A.M. Standard Time at your |
|---|---|---|---|
| | To | 01/30/16 | mailing address shown above. |

**LIMITS OF INSURANCE -**

General Aggregate Limit (Other Than Products/Completed Operations)    $4,000,000

Products/Completed Operations Aggregate Limit    $4,000,000

Personal & Advertising Injury Limit (Per Person Or Organization)    $2,000,000

Each Occurrence Limit    $2,000,000

Damage to Premises Rented to You Limit    (Any One Premises)    $100,000

Medical Expense Limit    (Any One Person)    $5,000

TOTAL ADVANCE ANNUAL GENERAL LIABILITY PREMIUM    $882.00

**Forms And Endorsements Applicable To This Coverage Part:**
CG0001  0413 , IL0021  0908 , CG7000  1298*, CG2503  0509 , CG2504A 0509 ,
CG2147  1207 , CG7017  1298 , CG2106  0514*, IL7013  1206 , CG2170  0108 ,
CG0168  1009 ; IL0286  0908 , CG2426  0413 .



**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**GENERAL LIABILITY DECLARATIONS**
(Continued)

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI 48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy Period | From 01/30/15 To 01/30/16 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|

Location Of All Premises Owned By, Rented To Or Controlled By The Named Insured
Are The Same As The Mailing Address Of The Policy Declarations Unless Otherwise
Indicated.

### GENERAL LIABILITY SCHEDULE

PREMIUM BASIS LEGEND -
S = GROSS        PER $1,000        A = AREA    PER 1,000 SQ. FT.        U = UNITS  PER UNIT
    SALES                          C = TOTAL COST  PER $1,000           T = SEE CLASSIFICATION
P = PAYROLL      PER $1,000        M = ADMISSIONS  PER 1,000                NOTES
O = OTHERS       PER $1,000

RATE LEGEND -
PREM/OP  =  PREMISES AND OPERATIONS                              MP = MINIMUM PREMIUM
PROD     =  PRODUCTS AND COMPLETED OPERATIONS
CMPCBN   =  COMPOSITE PREMISES/PRODUCTS COMPLETED OPERATIONS

| CLASSIFICATION MICHIGAN | CODE | PREMIUM BASIS | RATE | PREMIUM |
|---|---|---|---|---|
| 42910 W 10 MILE RD<br>NOVI               MI   48375<br>BUILDINGS OR PREMISES - BANK<br>OR OFFICE - MERCANTILE OR<br>MANUFACTURING MAINTAINED BY<br>THE INSURED (LESSOR'S RISK<br>ONLY) - OTHER THAN NOT-FOR-<br>PROFIT - INCLUDING PRODUCTS<br>AND/OR COMPLETED OPERATIONS.<br>PRODUCTS-COMPLETED OPERATIONS<br>INCLUDED IN THIS<br>CLASSIFICATION ARE SUBJECT TO<br>THE GENERAL AGGREGATE LIMIT. | 61217 | A 6,200 | PREM/OP  47.354 | $294 |
| 42916 W 10 MILE RD<br>NOVI               MI   48375<br>BUILDINGS OR PREMISES - BANK<br>OR OFFICE - MERCANTILE OR<br>MANUFACTURING MAINTAINED BY<br>THE INSURED (LESSOR'S RISK<br>ONLY) - OTHER THAN NOT-FOR-<br>PROFIT - INCLUDING PRODUCTS<br>AND/OR COMPLETED OPERATIONS.<br>PRODUCTS-COMPLETED OPERATIONS<br>INCLUDED IN THIS<br>CLASSIFICATION ARE SUBJECT TO<br>THE GENERAL AGGREGATE LIMIT. | 61217 | A 6,200 | PREM/OP  47.354 | $294 |



**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**RENEWAL
GENERAL LIABILITY DECLARATIONS
(Continued)**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|
| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 PROD. | 000 |

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI 48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy Period | From 01/30/15 To 01/30/16 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|

| CLASSIFICATION | CODE | PREMIUM BASIS | RATE | PREMIUM |
|---|---|---|---|---|
| 42920 W 10 MILE RD NOVI MI 48375 | | | | |
| BUILDINGS OR PREMISES - BANK OR OFFICE - MERCANTILE OR MANUFACTURING MAINTAINED BY THE INSURED (LESSOR'S RISK ONLY) - OTHER THAN NOT-FOR-PROFIT - INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS. PRODUCTS-COMPLETED OPERATIONS INCLUDED IN THIS CLASSIFICATION ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT. | 61217 | A 6,200 | PREM/OP 47.354 | $294 |

PREM/OP    MP      $124

**TOTAL**
TOTAL PREMIUM - PREMISES AND OPERATIONS                                        $882

TOTAL ADVANCE ANNUAL GENERAL LIABILITY PREMIUM                  $882



**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**BUSINESS AUTO COVERAGE DECLARATIONS**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY |
|---|---|

| ITEM ONE-NAMED INSURED & MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|

| | |
|---|---|
| K V G PROPERTIES INC<br>28345 BECK RD STE 100<br>WIXOM MI  48393 | GRIFFIN SMALLEY & WILKERSON<br>PO BOX 2999<br>FARMINGTON HILLS MI 48333-2999<br>TELEPHONE 248-471-0970 |

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy Period | From<br>To | 01/30/15<br>01/30/16 | at 12:01 A.M. Standard Time at your<br>mailing address shown above. |
|---|---|---|---|

**ITEM TWO**          SCHEDULE OF COVERAGES AND COVERED AUTOS

Each Of These Coverages Will Apply Only To Those "Autos" Shown As Covered
"Autos". "Autos" Are Shown As Covered "Autos" For A Particular Coverage By The
Entry Of One Or More Of The Symbols From The Covered Auto Section Of The
Business Auto Coverage Form Next To The Name Of The Coverage.

| COVERAGES | COVERED AUTO SYMBOLS | LIMIT<br>THE MOST WE WILL PAY FOR ANY<br>ONE ACCIDENT OR LOSS | | PREMIUM |
|---|---|---|---|---|
| Liability | 08 09 | Bodily Injury<br>and<br>Property Damage | $1,000,000 Each Accident | $140 |
| | | TOTAL ADVANCE ANNUAL PREMIUM | | $140 |

Audit Period (If Applies)   ☐ Annual   ☐ Semi-Annual   ☐ Quarterly   ☐ Monthly

Forms And Endorsements Attached To This Coverage Form:
CADS03   0310 , CA0001   0310 , IL0021   0908 , CA0110   0311 , CA0217   0394 ,
IL0286   0908 , CA2394   0306 ; CA7080   0312 :



**WESTFIELD**
INSURANCE
*Sharing Knowledge. Building Trust.®*

43

**RENEWAL**
**BUSINESS AUTO COVERAGE DECLARATIONS**
(Continued)

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | | |
|---|---|---|---|---|
| **ITEM ONE-NAMED INSURED & MAILING ADDRESS** | **AGENCY** | 21-04048 | **PROD.** | 000 |

| | |
|---|---|
| K V G PROPERTIES INC<br>28345 BECK RD STE 100<br>WIXOM MI  48393 | GRIFFIN SMALLEY & WILKERSON<br>PO BOX 2999<br>FARMINGTON HILLS MI 48333-2999<br>TELEPHONE 248-471-0970 |

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy<br>Period | From<br>To | 01/30/15<br>01/30/16 | at 12:01 A.M. Standard Time at your<br>mailing address shown above. |
|---|---|---|---|

### HIRED AUTO LIABILITY

| STATE | ESTIMATED ANNUAL COST OF HIRE | PREMIUM |
|---|---|---|
| MI | IF ANY | |

Cost Of Hire Means The Total Amount You Incur For The Hire Of Autos You Do Not Own (Not Including Autos You Borrow Or Rent From Your Partners Or Employees Or Their Family Members).  Cost Of Hire Does Not Include Charges For Services Performed By Motor Carriers Of Property Or Passengers.

### NON-OWNERSHIP LIABILITY

| STATE | RATING BASIS-NUMBER OF EMPLOYEES | ESTIMATED NUMBER<br>OF EMPLOYEES | PREMIUM |
|---|---|---|---|
| MI | | 1 | $140 |

| | |
|---|---|
| TOTAL ADVANCE ANNUAL AUTO PREMIUM | $140 |



**WESTFIELD**
INSURANCE
Sharing Knowledge. Building Trust.®

43

**COMMERCIAL INLAND MARINE**
**RENEWAL DECLARATIONS**
**SCHEDULE OF COVERAGE FORMS**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY |
|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI  48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy Period | From 01/30/15 To 01/30/16 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|

This policy contains the following Inland Marine Coverage Forms:

| Coverage Forms | Premium |
|---|---|
| Accounts Receivable | Included |
| Fine Arts Floater Coverage | Included |
| Valuable Papers and Records | Included |

**Total Advance Annual Inland Marine Premium**      Included

All Forms and Endorsements applicable to Inland Marine Coverages:
CM0001   0904 , CM7090   0300 , CM0111   0701 , IL0286   0908 , CM7001   1110 ,
CM0066   0113 , IM7400   0811 , IM7405   0811 , IM7406   0811 , IM7417   0811 ,
IM7423   1112 , IM7420   0811 , CM7000   0292 , CM0067   0113 :



**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**COMMERCIAL INLAND MARINE**
**RENEWAL DECLARATIONS**
**ACCOUNTS RECEIVABLE COVERAGE**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | | |
|---|---|---|---|---|
| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI  48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

| Policy Number: CWP 3 449 419 | |11| WIC Account Number: 2170002239 | | Q |

| Policy Period | From 01/30/15 To 01/30/16 | at 12:01 A.M. Standard Time at your mailing address shown above. |

**DESCRIPTION OF PREMISES**
Loc Bldg  Street Address, City & State                    Occupancy

✖Refer to Commercial Property Expanded and/or Signature Series Schedule(s) for Coverages and Limits of Insurance.✖

**COVERED PROPERTY AND LIMITS OF INSURANCE**
A. Coverage Applicable At Your Premises
Loc Bldg Item                                        Limits of Insurance

B. Coverage Applicable Away From Your Premises

✖ 80 % COINSURANCE APPLIES. REFER TO COVERAGE FORM.

**DESCRIPTION OF RECEPTACLES**
Loc Bldg Item  Class  Label    Issuer    Manufacturer

Total Advance Annual
Accounts Receivable Premium              Included

Forms and Endorsements applicable to this coverage:



## WESTFIELD INSURANCE
### Sharing Knowledge. Building Trust.®

**43**

**COMMERCIAL INLAND MARINE**
**RENEWAL DECLARATIONS**
**VALUABLE PAPERS AND RECORDS COVERAGE**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI  48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy Period | From | 01/30/15 | at 12:01 A.M. Standard Time at your |
| | To | 01/30/16 | mailing address shown above. |

### COVERED PROPERTY AND LIMITS OF INSURANCE

Specifically Described Property
Loc Bldg Item    Description                                    Limit of Insurance

✳Refer to Commercial Property Expanded and/or Signature Series Schedule(s) for
Coverages and Limits of Insurance.✳

All Other Covered Property
Loc Bldg Item                                                 Limit of Insurance

Property Away From Your Premises
Item                                                         Limit of Insurance

                    DESCRIPTION OF RECEPTACLES
Loc Bldg Item Class   Label        Issuer      Manufacturer

                    Total Advance Annual
                    Valuable Papers and Records Premium        Included

Forms and Endorsements applicable to this coverage:
CM7000  0292 , CM0067  0113 .

PAGE   01 OF  01          CM 70 00 (02-92)              11/17/14          ORIGINAL

POLICY NUMBER: CWP 3449419

POLICY PERIOD: FROM 01/30/2015 TO 01/30/2016

## SCHEDULE OF COVERAGES
## FINE ARTS FLOATER

(The entries required to complete this schedule
will be shown below or on the "schedule of coverages".)

**COVERED PREMISES**

Refer to attached Fine Arts Schedule

**COVERED FINE ARTS**

Refer to attached Fine Arts Schedule

**CATASTROPHE LIMIT** Refer To Commercial Property Expanded and/or
Signature Series Schedule

**DEDUCTIBLE AMOUNT** Refer To Commercial Property Expanded and/or
Signature Series Schedule

| COVERAGE EXTENSIONS | | "Limit" |
|---|---|---|
| Emergency Removal | | 30 days |
| Emergency Removal Expenses | 30 days | $  1,000 |

| SUPPLEMENTAL COVERAGES | "Limit" |
|---|---|
| Newly Acquired Art | 25% of catastrophe limit |
| Off-Premises Coverage | $  10,000 |
| Property Used To Display Or Protect Art | $   5,000 |
| Transit Coverage | $  10,000 |

**ADDITIONAL INFORMATION**

IM7400   0811 , IM7405   0811 , IM7406   0811 , IM7417   0811 , IM7423   1112 ,
IM7420   0811 .

Copyright, American Association of Insurance Services, Inc., 2011

POLICY NUMBER: CWP 3449419

POLICY PERIOD: FROM 01/30/2015 TO 01/30/2016

## FINE ARTS SCHEDULE
## FINE ARTS FLOATER

(The entries required to complete this schedule
will be shown below or on the "schedule of coverages".)

Refer To Commercial Property Expanded and/or Signature Series Schedule(s) For

Coverages And Limits Of Insurance

Prem. No.                    Described Premises

SCHEDULED FINE ARTS

Item No.                    Description                    "Limit"

Copyright, American Association of Insurance Services, Inc., 2011

POLICY NUMBER: CWP 3449419

POLICY PERIOD: FROM 01/30/2015 TO 01/30/2016

This endorsement changes the
Fine Arts Coverage
- PLEASE READ THIS CAREFULLY -

## STORAGE LOCATION COVERAGE

(The entries required to complete this endorsement
will be shown below or on the "schedule of coverages".)

**STORAGE LOCATION SCHEDULE**

| Loc.<br>No. | Storage Location | Storage<br>Location<br>"Limit" |
|---|---|---|
| | Miscellaneous | Refer to Signature<br>Series/Expanded Property<br>Fine Arts Limit |

**SUPPLEMENTAL COVERAGES**

The following Supplemental Coverage is added:

**Storage Location**

1. **Coverage** - "We" cover direct physical loss or damage caused by a covered peril to "fine arts" while in storage at a premises that is not described on the "schedule of coverages".

2. **Coverage Limitation** - "We" only cover "fine arts" in storage at a location described on the Storage Location Schedule.

3. **Limit** - The most "we" pay in any one occurrence for loss or damage to "fine arts" at a storage location is the Storage Location Coverage Limit for that location on the Storage Location Schedule.

Copyright, American Association of Insurance Services, Inc., 2011



**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**CRIME AND FIDELITY COVERAGE PART DECLARATION**
**(COMMERCIAL ENTITIES)**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | | | |
|---|---|---|---|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|
| K V G PROPERTIES INC<br>28345 BECK RD STE 100<br>WIXOM MI  48393 | GRIFFIN SMALLEY & WILKERSON<br>PO BOX 2999<br>FARMINGTON HILLS MI 48333-2999<br>TELEPHONE 248-471-0970 | | | |

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy Period | From  01/30/15<br>To    01/30/16 | at 12:01 A.M. at your mailing address shown above. |
|---|---|---|

| Insuring Agreements | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|

✳**Refer to Commercial Property Expanded and/or Signature Series Schedule(s) for Coverages and Limits of Insurance.**✳

Note: Employee Theft, Forgery Or Alterations, Inside The Premises - Theft Of Money And Securities and Outside The Premises included in the schedule(s) apply on a policy-level basis.

Coverage is Written: **Primary**

| Total Advance Annual Crime Premium | Included |
|---|---|

**Forms and Endorsements forming part of this policy coverage when issued:**
CR7000    0813✳, CR0021    0813✳, CR0110    0807 , CR0246    1010 .

CANCELLATION OF PRIOR INSURANCE ISSUED BY US:
By acceptance of this Coverage Part / Policy you give us notice cancelling prior policy Nos. _____; the cancellation to be effective at the time this Coverage Part become effective.

PAGE    01 OF  01          CR 70 00 (08-13)              11/17/14



**WESTFIELD INSURANCE**
Sharing Knowledge. Building Trust.®

43

**RENEWAL**
**COMMERCIAL LIABILITY UMBRELLA DECLARATIONS**

| COMPANY PROVIDING COVERAGE | WESTFIELD INSURANCE COMPANY | | |
|---|---|---|---|

| NAMED INSURED AND MAILING ADDRESS | AGENCY | 21-04048 | PROD. | 000 |
|---|---|---|---|---|

K V G PROPERTIES INC
28345 BECK RD STE 100
WIXOM MI 48393

GRIFFIN SMALLEY & WILKERSON
PO BOX 2999
FARMINGTON HILLS MI 48333-2999
TELEPHONE 248-471-0970

| Policy Number: CWP 3 449 419 | 11 | WIC Account Number: 2170002239 | Q |
|---|---|---|---|

| Policy Period | From 01/30/15 To 01/30/16 | at 12:01 A.M. Standard Time at your mailing address shown above. |
|---|---|---|

**LIMITS OF INSURANCE**

| | |
|---|---|
| $1,000,000 | EACH OCCURRENCE LIMIT |
| $1,000,000 | GENERAL AGGREGATE LIMIT |
| $1,000,000 | PERSONAL & ADVERTISING INJURY LIMIT |
| $0 | SELF INSURED RETENTION |

**SCHEDULE OF UNDERLYING INSURANCE**

| POLICY NUMBER | TYPE OF COVERAGE | INSURER | LIMITS OF LIABILITY | | POLICY PERIOD |
|---|---|---|---|---|---|
| CWP 3449419 | General Liability | Westfield Insurance | $4,000,000 $4,000,000 $2,000,000 $2,000,000 | General Aggregate Products/Completed Operations Aggregate Personal And Advertising Injury Each Occurrence | 01/30/15 To 01/30/16 |
| CWP 3449419 | Auto Liability | Westfield Insurance | $1,000,000 | Bodily Injury And Property Damage Each Accident | 01/30/15 To 01/30/16 |

**PREMIUM BASIS:** FLATCHARGE

| | |
|---|---|
| COMMERCIAL UMBRELLA ANNUAL PREMIUM | $500.00 |
| TOTAL ADVANCE ANNUAL PREMIUM | $500.00 |

**Forms And Endorsements Applicable To This Coverage Part:**
CU2127  1204 , CU2130  0108 , CU2152  1205 , CUDS01  0900 , CU0001  0413 ,
CU0221  0900 , CU7000  1206 , CU2108  0413 , CU2125  1201 , CU0116  0900 ,
CU2123  0202 , CU7024  1207 , CU2432  0413 , CU7033  0911 , IL7013  1206 ,
CU2186  0514*, CU2430  0413 .

POLICY NUMBER:  CWP 3449419                                    COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY COVERAGE PART
# EQUIPMENT BREAKDOWN COVERAGE SCHEDULE

These coverages apply to all locations covered on the policy, unless otherwise specified.

## SCHEDULE OF COVERED LOCATIONS WITH DEDUCTIBLES

| Loc. No. | Bldg. No. | Combined All Coverages Deductible | Direct Coverages Deductible | Indirect Coverages Deductible | Spoilage Deductible ($ Amt. or % of Loss) |
|---|---|---|---|---|---|
| 001 | ALL | $ 500 | | | |
| 002 | ALL | $ 500 | | | |
| 003 | ALL | $ 500 | | | |

CP 70 83  04 08

POLICY NUMBER:  CWP 3449419                              COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY COVERAGE PART
# EQUIPMENT BREAKDOWN COVERAGE SCHEDULE

Equipment Breakdown is subject to the Limits of Insurance shown in the Commercial Property Coverage Part Declarations unless otherwise specified on the schedule below.

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit | $ |
| Business Income | $ |
| Extra Expense | $ |

The Limits for the following Coverages are included in the Equipment Breakdown Coverage form for $50,000 each unless otherwise specified on the schedule below. (Note:  The Service Interruption Limit will follow the Business Income, Extra Expense or Spoilage Limit with a 24 hour waiting period).

| Coverages | Limits |
|---|---|
| Expediting Expenses | $ |
| Hazardous Substances | $ |
| Spoilage | $ |
| Computer Equipment | $ |
| Data Restoration | $ |
| Service Interruption | $ |

CP 70 83  04 08

POLICY NUMBER:  CWP 3449419                                COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY COVERAGE PART
# EQUIPMENT BREAKDOWN COVERAGE SCHEDULE

**Other Conditions**

CP 70 83  04 08

POLICY NUMBER:   CWP 3449419                           COMMERCIAL PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

    BUILDING AND PERSONAL PROPERTY COVERAGE FORM
    BUILDERS' RISK COVERAGE FORM
    CONDOMINIUM ASSOCIATION COVERAGE FORM
    CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
    STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number: | 001 | Building Number: | 001 | Applicable Clause (Enter C., D., E., or F.): | D |
|---|---|---|---|---|---|
| **Description Of Property:**  BUILDING | | | | | |
| **Loss Payee Name:**  FIRST PLACE BANK ISAOA | | | | | |
| **Loss Payee Address:**  24725 W 12 MILE RD SOUTHFIELD      MI 480340000 | | | | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the covered Property.

The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule.

**C. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**D. LENDER'S LOSS PAYABLE CLAUSE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

     **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

     **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

     **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

© ISO Properties, Inc. 2007

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

  **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

  **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**E. CONTRACT OF SALE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

  **a.** Adjust losses with you; and

  **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear:

**3.** The following is added to the OTHER INSURANCE Condition:

  For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**F. BUILDING OWNER LOSS PAYABLE CLAUSE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:   CWP 3449419                                    COMMERCIAL PROPERTY

## THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> BUILDERS' RISK COVERAGE FORM
> CONDOMINIUM ASSOCIATION COVERAGE FORM
> CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
> STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number: | 002 | Building Number: | 001 | Applicable Clause (Enter C., D., E., or F.): | D |
|---|---|---|---|---|---|
| Description Of Property:   BUILDING | | | | | |
| Loss Payee Name: | FIRST PLACE BANK ISAOA | | | | |
| Loss Payee Address: | 24725 W 12 MILE RD SOUTHFIELD     MI 480340000 | | | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the covered Property.

The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule.

**C.** **Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**D.** **LENDER'S LOSS PAYABLE CLAUSE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

   **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

© ISO Properties, Inc. 2007

**CP 12 18  06 07**
**Page 1 of 2**

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**E.  CONTRACT OF SALE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear:

**3.** The following is added to the OTHER INSURANCE Condition:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**F.  BUILDING OWNER LOSS PAYABLE CLAUSE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

**2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

POLICY NUMBER:    CWP 3449419                          COMMERCIAL PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> BUILDERS' RISK COVERAGE FORM
> CONDOMINIUM ASSOCIATION COVERAGE FORM
> CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
> STANDARD PROPERTY POLICY

## SCHEDULE

| Premises Number: | 003 | Building Number: | 001 | Applicable Clause (Enter C., D., E., or F.): | D |
|---|---|---|---|---|---|

| | |
|---|---|
| **Description Of Property:** | BUILDING |
| **Loss Payee Name:** | FIRST PLACE BANK ISAOA |
| **Loss Payee Address:** | 24725 W 12 MILE RD SOUTHFIELD      MI 480340000 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations

**A.** When this endorsement is attached to the STANDARD PROPERTY POLICY **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the covered property.

The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule.

**C. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**D. LENDER'S LOSS PAYABLE CLAUSE**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

    **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

    **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

        **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

© ISO Properties, Inc  2007

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

    **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

    **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

    At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**E.** **CONTRACT OF SALE**

    **1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

    **2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

        **a.** Adjust losses with you; and

        **b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear:

    **3.** The following is added to the OTHER INSURANCE Condition:

    For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**F.** **BUILDING OWNER LOSS PAYABLE CLAUSE**

    **1.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

    **2.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

    **3.** We will adjust losses to tenant's improvements and betterments with you, unless the lease provides otherwise.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **2.p.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc , 2013

CG 21 06  05 14

CRIME AND FIDELITY

# COMMERCIAL CRIME COVERAGE FORM
# (LOSS SUSTAINED FORM)

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is or is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A.  Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit Of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition **E.1.k.** or **E.1.l.**, which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.g.**:

### 1.  Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2.  Forgery Or Alteration

**a.**  We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)**  Made or drawn by or drawn upon you; or

**(2)**  Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated to the same as the original it replaced.

**b.**  If you are sued for refusing to pay any instrument covered in Paragraph **2.a.**, on the basis that it has

been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay for such legal expenses is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3.  Inside The Premises – Theft Of Money And Securities

We will pay for:

**a.**  Loss of "money" and "securities" inside the "premises" or "financial institution premises";

**(1)**  Resulting directly from "theft" committed by a person present inside such "premises" or "financial institution premises"; or

**(2)**  Resulting directly from disappearance or destruction.

**b.**  Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.**  Loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of, or unlawful entry into, those containers.

### 4.  Inside the Premises – Robbery Or Safe Burglary Of Other Property

We will pay for:

**a.**  Loss of or damage to "other property":

**(1)**  Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)**  Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.**  Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

    c.   Loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5.  Outside The Premises**

We will pay for:

**a.**   Loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.**   Loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6.  Computer And Funds Transfer Fraud**

   **a.**  We will pay for:

     **(1)**  Loss resulting directly from a fraudulent:

        **(a)**  Entry of "electronic data" or "computer program" into; or

        **(b)**  Change of "electronic data" or "computer program" within;

     any "computer system" owned, leased or operated by you, provided the fraudulent entry or fraudulent change causes, with regard to Paragraphs **6.a.(1)(a)** and **6.a.(1)(b)**:

        **(i)**   "Money", "securities" or "other property" to be transferred, paid or delivered; or

        **(ii)**  Your account at a "financial institution" to be debited or deleted.

     **(2)**  Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and transfer, pay or deliver "money" or "securities" from that account.

   **b.**  As used in Paragraph **6.a.(1)**, fraudulent entry or fraudulent change of "electronic data" or "computer program" shall include such

entry or change made by an "employee" acting, in good faith, upon a "fraudulent instruction" received from a computer software contractor who has a written agreement with you to design, implement or service "computer programs" for a "computer system" covered under this Insuring Agreement.

**7.  Money Orders And Counterfeit Money**

We will pay for loss resulting directly from your having, in good faith, accepted in exchange for merchandise, "money" or services:

**a.**   Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**b.**   "Counterfeit money" that is acquired during the regular course of business.

**B.  Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit Of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or coverages.

**C.  Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D.  Exclusions**

   **1.**  This insurance does not cover:

     **a.**  **Acts Committed By You, Your Partners Or Your Members**

        Loss resulting from "theft" or any other dishonest act committed by:

        **(1)**  You; or

        **(2)**  Any of your partners or "members";

        whether acting alone or in collusion with other persons.

     **b.**  **Acts Committed By Your Employees Learned Of By You Prior To The Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of such "theft" or dishonest act prior to the Policy Period shown in the Declarations.

c.  **Acts Committed By Your Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

(1) Whether acting alone or in collusion with other persons; or

(2) While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

d.  **Confidential Or Personal Information**

Loss resulting from:

(1) The disclosure of your or another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The use of another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of non-public information.

e.  **Data Security Breach**

Fees, costs, fines, penalties and other expenses incurred by you which are related to the access to or disclosure of another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists,

financial information, credit card information, health information or any other type of nonpublic information.

f.  **Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

g.  **Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

(1) Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

(2) Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance; or

(3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

h.  **Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

i.  **Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

j.  **Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

k.  **War And Military Action**

Loss or damage resulting from:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2. Insuring Agreement **A.1.** does not cover:

   a. **Inventory Shortages**

   Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

   (1) An inventory computation; or

   (2) A profit and loss computation.

   However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

   b. **Trading**

   Loss resulting from trading, whether in your name or in a genuine or fictitious account.

   c. **Warehouse Receipts**

   Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Insuring Agreements **A.3.**, **A.4.** and **A.5.** do not cover:

   a. **Accounting Or Arithmetical Errors Or Omissions**

   Loss resulting from accounting or arithmetical errors or omissions.

   b. **Exchanges Or Purchases**

   Loss resulting from the giving or surrendering of property in any exchange or purchase.

   c. **Fire**

   Loss or damage resulting from fire, however caused, except:

   (1) Loss of or damage to "money" and "securities"; and

   (2) Loss from damage to a safe or vault.

d. **Money Operated Devices**

   Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

e. **Motor Vehicles Or Equipment And Accessories**

   Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

f. **Transfer Or Surrender Of Property**

   (1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "financial institution premises":

      (a) On the basis of unauthorized instructions;

      (b) As a result of a threat including, but not limited to:

         (i) A threat to do bodily harm to any person;

         (ii) A threat to do damage to any property;

         (iii) A threat to introduce a denial of service attack into any "computer system";

         (iv) A threat to introduce a virus or other malicious instruction into any "computer system" which is designed to damage, destroy or corrupt "electronic data" or "computer programs" stored within the "computer system";

         (v) A threat to contaminate, pollute or render substandard your products or goods; or

         (vi) A threat to disseminate, divulge or utilize:

            i. Your confidential information;

            ii. Confidential or personal information of another person or organization; or

            iii. Weaknesses in the source code within any "computer system".

(2) But, this exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

    (a) Had no knowledge of any threat at the time the conveyance began; or

    (b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone else acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not cover:

**a. Authorized Access**

Loss resulting from a fraudulent:

(1) Entry of "electronic data" or "computer program" into; or

(2) Change of "electronic data" or "computer program" within;

any "computer system" owned, leased or operated by you by a person or organization with authorized access to that "computer system", except when covered under Insuring Agreement **A.6.b.**

**b. Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**c. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**d. Fraudulent Instructions**

Loss resulting from an "employee" or "financial institution" acting upon any instruction to:

(1) Transfer, pay or deliver "money", "securities" or "other property"; or

(2) Debit or delete your account;

which instruction proves to be fraudulent, except when covered under Insuring Agreement **A.6.a.(2)** or **A.6.b.**

**e. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(1) An inventory computation; or

(2) A profit and loss computation.

**E.** **Conditions**

The following conditions apply in addition to the Common Policy Conditions:

**1.** **Conditions Applicable To All Insuring Agreements**

**a. Additional Premises Or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" is not required, and no additional premium will be charged for the remainder of the Policy Period shown in the Declarations.

**b. Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresents a material fact concerning:

(1) This insurance;

(2) The property covered under this insurance;

(3) Your interest in the property covered under this insurance; or

(4) A claim under this insurance.

**c. Consolidation - Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

(1) You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

(2) For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition or assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

d. **Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in the terms and conditions.

e. **Duties In The Event Of Loss**

After you discover a loss or a situation that may result in loss of or damage to "money", "securities" or "other property", you must:

(1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement A.1. or A.2.) involves a violation of law, you must also notify the local law enforcement authorities;

(2) Give us a detailed, sworn proof of loss within 120 days;

(3) Cooperate with us in the investigation and settlement of any claim;

(4) Produce for our examination all pertinent records;

(5) Submit to examination under oath at our request and give us a signed statement of your answers; and

(6) Secure all of your rights of recovery against any person or organization responsible for the

loss and do nothing to impair those rights.

f. **Employee Benefit Plans**

The "employee benefit plans" shown in the Declarations (hereinafter referred to as Plan) are included as insureds under Insuring Agreement **A.1.** subject to the following:

(1) If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator is responsible for selecting a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required under ERISA as if each Plan were separately insured.

(2) With respect to loss sustained or discovered by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(3) If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

(4) If two or more Plans are insured under this insurance, any payment we make for loss:

(a) Sustained by two or more Plans; or

(b) Of commingled "money", "securities' or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required under ERISA for each Plan bears to the total of those limits.

(5) The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

g. **Extended Period To Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than one year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than one year from the date of that cancellation with regard to any "employee benefit plan".

**h.  Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages are cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than one year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than one year from the date of that cancellation

with regard to any "employee benefit plan".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, or payment by us to any "employee benefit plan" for loss sustained by that Plan, shall fully release us on account of such loss.

**i.  Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within two years from the date you "discovered" the loss.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j.  Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**k.  Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

**(1) Loss Sustained Partly During This Insurance And Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting from an "occurrence" taking place:

**(a)** Partly during the Policy Period shown in the Declarations; and

**(b)** Partly during the policy period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this policy period. We will then settle the remaining amount of loss that you sustained during the policy period(s) of the prior insurance.

**(2) Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the policy period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided:

**(a)** This insurance became effective at the time of cancellation of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the policy period(s) of any other prior insurance.

**(3)** In settling loss under Paragraphs **k.(1)** and **k.(2)**:

**(a)** The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

**(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, of the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

**(4)** The following examples demonstrate how we will settle losses subject to this condition:

**Example Number 1**

The insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B,** $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy **A.** The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00)

**(b)** The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

CR 00 21 08 13
Page 8 of 16

**Example Number 2**

The Insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B**.

### Policy A

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

### Policy B

Issued prior to Policy **A**. Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B**, $75,000

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy **B**. The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we will pay is the Policy **A** Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000, which is greater than the $125,000 policy limit.

**(b)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we will pay for this loss is $150,000.

**Example Number 3**

The Insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D**.

### Policy A

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

### Policy B

Issued prior to Policy **A**. Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

### Policy C

Issued prior to Policy **B**. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

### Policy D

Issued prior to Policy **C**. Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

The amount of loss sustained under Policy **A** is $350,000, under Policy **B**, is $250,000, under Policy **C**, $600,000 and under Policy **D**, $800,000.

The highest single Limit of Insurance applicable to this entire loss is is $1,000,000 written under Policy **A**. The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

**(b)** The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).

**(c)** The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).

**(d)** We will not make any further payment under Policy **D**, as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we will pay for the loss is $1,000,000.

**I.   Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

**(1)** If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the policy period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this insurance, provided:

(a) This insurance became effective at the time of cancellation of the prior insurance; and

(b) The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

(2) In settling loss subject to this condition:

(a) The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance.

(b) We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance.

(3) The insurance provided under this condition is subject to the following:

(a) If loss covered under this condition is also partially covered under Condition E.1.k, the amount recoverable under this condition is part of, not in addition to, the amount recoverable under Condition E.1.k.

(b) For loss covered under this condition that is not subject to Paragraph I.(3)(a), the amount recoverable under this condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

(i) This insurance as of its effective date; or

(ii) The prior cancelled insurance had it remained in effect.

m. **Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

(1) **Primary Insurance**

When this insurance is written as primary insurance, and:

(a) You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit Of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

(b) You have other insurance covering the same loss other than that described in Paragraph m.(1)(a), we will only pay for the amount of loss that exceeds:

(i) The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

(ii) The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

(2) **Excess Insurance**

(a) When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit Of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

(b) However, if loss covered under this insurance is subject to a deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

n. **Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

(1) That you own or lease;

(2) That is held by you in any capacity; or

(3) For which you are legally liable, provided you were liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**o.  Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**p.  Recoveries**

(1) Any recoveries, whether effected before or after any payment under this insurance, whether made by us or by you, shall be applied net of the expense of such recovery:

(a) First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

(b) Second, to us in satisfaction of amounts paid in settlement of your claim;

(c) Third, to you in satisfaction of any Deductible Amount; and

(d) Fourth, to you in satisfaction of any loss not covered under this insurance.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

**q.  Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**r.  Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**s.  Valuation - Settlement**

The value of any loss for purposes of coverage under this insurance shall be determined as follows:

**(1)  Money**

Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

(a) At face value in the "money" issued by that country; or

(b) In the United States of America dollar equivalent, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(2)  Securities**

Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

(a) Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(b) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

(i) Market value of the "securities" at the close of business on the day the loss was "discovered"; or

(ii) Limit of Insurance applicable to the "securities".

**(3)  Property Other Than Money And Securities**

(a) Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

CR 00 21  08 13
Page 11 of 16

     (i) The Limit of Insurance applicable to the lost or damaged property;

     (ii) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

     (iii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**(b)** We will not pay on a replacement cost basis for any loss or damage to property covered under Paragraph **s.(3)(a)**:

     (i) Until the lost or damaged property is actually repaired or replaced; and

     (ii) Unless the repairs or replacement is made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(c)** We will, at your option, pay for loss or damage to such property:

     (i) In the "money" of the country in which the loss or damage was sustained; or

     (ii) In the United States of America dollar equivalent of the "money" of the country in which the loss or damage was sustained, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(d)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable To Insuring Agreement A.1.**

**a. Termination As To Any Employee**

This Insuring Agreement terminates as to any "employee":

    **(1)** As soon as:

     **(a)** You; or

     **(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

    **(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in Territory Condition **E.1.q.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable To Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Electronic And Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss or, if that is not possible, an affidavit setting forth the amount and cause of loss.

d. **Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.2.**

4. **Conditions Applicable To Insuring Agreements A.4. And A.5.**

a. **Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.**, we will only pay for the amount of loss you cannot recover:

(1) Under your contract with the armored motor vehicle company; and

(2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

b. **Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

(1) Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

(2) Manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

5. **Conditions Applicable To Insuring Agreement A.6.**

a. **Special Limit Of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

b. **Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.6.**

F. **Definitions**

1. "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enable the computer or devices to receive, process, store or send "electronic data".

2. "Computer system" means:

a. Computers, including Personal Digital Assistants (PDAs) and other transportable or handheld devices, electronic storage devices and related peripheral components;

b. Systems and applications software; and

c. Related communications networks;

by which "electronic data" is collected, transmitted, processed, stored or retrieved.

3. "Counterfeit money" means an imitation of "money" which is intended to deceive and to be taken as genuine.

4. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

5. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

6. "Electronic data" means information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on data storage devices, including hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

7. "Employee":

a. Means:

(1) Any natural person:

(a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any dishonest act committed by the "employee";

(b) Whom you compensate directly by salary, wages or commissions; and

(c) Whom you have the right to direct and control while performing services for you;

(2) Any natural person who is furnished temporarily to you:

(a) To substitute for a permanent "employee", as defined in Paragraph **7.a.(1)**, who is on leave; or

(b) To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you;

(3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in Paragraph **7.a.(2)**;

(4) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; or

(b) Your director or trustee while that person is engaged in handling "money", "securities" or "other property" of any "employee benefit plan";

(5) Any natural person who is a former "employee", partner, "member", "manager", director, or trustee retained by you as a consultant while performing services for you;

(6) Any natural person who is a guest student or intern pursuing studies or duties;

(7) Any natural person employed by an entity merged or consolidated with you prior to the effective date of this Policy; and

(8) Any natural person who is your "manager", director or trustee while:

(a) Performing acts within the scope of the usual duties of an "employee"; or

(b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

b. Does not mean:

Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **7.a.**

8. "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and that is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

9. "Financial institution" means:

a. With regard to Insuring Agreement **A.3.**:

(1) A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

(2) An insurance company.

b. With regard to Insuring Agreement **A.6.**:

CR 00 21  08 13
Page 14 of 16

(1) A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

(2) An insurance company; or

(3) A stock brokerage firm or investment company.

10. "Financial institution premises" means the interior of that portion of any building occupied by a "financial institution".

11. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

12. "Fraudulent instruction" means:

a. With regard to Insuring Agreement **A.6.a.(2):**

(1) A computer, telegraphic, cable, teletype, telefacsimile, telephone or other electronic instruction directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", which instruction purports to have been issued by you, but which in fact was fraudulently issued by someone else without your knowledge or consent.

(2) A written instruction (other than those covered under Insuring Agreement **A.2.**) issued to a "financial institution" directing the "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", through an electronic funds transfer system at specified times or under specified conditions, which instruction purports to have been issued by you, but which in fact was issued, forged or altered by someone else without your knowledge or consent.

(3) A computer, telegraphic, cable, teletype, telefacsimile, telephone or other electronic or written instruction initially received by you, which instruction

purports to have been issued by an "employee", but which in fact was fraudulently issued by someone else without your or the "employee's" knowledge or consent.

b. With regard to Insuring Agreement **A.6.b.:**

A computer, telegraphic, cable, teletype, telefacsimile, telephone or other electronic, written or voice instruction directing an "employee" to enter or change "electronic data" or "computer programs" within a "computer system" covered under the Insuring Agreement, which instruction in fact was fraudulently issued by your computer software contractor.

13. "Manager" means a natural person serving in a directorial capacity for a limited liability company.

14. "Member" means an owner of a limited liability company represented by its membership interest who, if a natural person, may also serve as a "manager".

15. "Messenger" means you, or your relative, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

16. "Money" means:

a. Currency, coins and bank notes in current use and having a face value;

b. Traveler's checks and money orders held for sale to the public; and

c. In addition, includes:

(1) Under Insuring Agreements **A.1.** and **A.2.**, deposits in your account at any financial institution;and

(2) Under Insuring Agreement **A.6.**, deposits in your account at a "financial institution" as defined in Paragraph **F.9.b.**

17. "Occurrence" means:

a. Under Insuring Agreement **A.1.:**

(1) An individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

b. Under Insuring Agreement **A.2.:**

  (1) An individual act;

  (2) The combined total of all separate acts whether or not related; or

  (3) A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

c. Under all other Insuring Agreement:

  (1) An individual act or event;

  (2) The combined total of all separate acts or events whether or not related; or

  (3) A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

18. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include "computer programs", "electronic data" or any property specifically excluded under this insurance.

19. "Premises" means the interior of that portion of any building you occupy in conducting your business.

20. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

a. Caused or threatened to cause that person bodily harm; or

b. Committed an obviously unlawful act witnessed by that person.

21. "Safe burglary" means the unlawful taking of:

a. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

b. A safe or vault from inside the "premises".

22. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

23. "Theft" means the unlawful taking of property" to the deprivation of the insured.

24. "Transfer account" means an account maintained by you at a "financial institution" from which you can initiate the transfer, payment or delivery of "money" or "securities":

a. By means of computer, telegraphic, cable, teletype, telefacsimile, telephone or other electronic instructions; or

b. By means of written instructions (other than those covered under Insuring Agreement **A.2.**) establishing the conditions under which such transfers are to be initiated by such "financial institution" through an electronic funds transfer system.

25. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. Exclusion **2.t.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

   **2.  Exclusions**

   This insurance does not apply to:

   **t.  Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

   Damages arising out of:

   **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

   **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

   However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

   **2.  Exclusions**

   This insurance does not apply to:

   **Access Or Disclosure Of Confidential Or Personal Information**

   "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013      **CU 21 86  05 14**

# IMPORTANT NOTICE TO OUR POLICYHOLDERS

Section 500.2236 of the Michigan Insurance Code of 1956, 1956 PA 218 and Insurance Bulletin 97-03 allows for rates, rules and policy forms created by a rating organization or rates, rules and forms that had been previously filed with the department to be exempt from certain filing requirements with the Michigan Department of Insurance. This policy may contain rates, rules and forms that are exempt from filing.

If you have any questions regarding this notice, please contact your Independent Insurance Agent representing Westfield Group.

Thank you for allowing Westfield Group the opportunity to provide your insurance protection.

AD 86 36  10 04

# ADVISORY NOTICE TO POLICYHOLDERS
# 2010 COMMERCIAL AUTO MULTISTATE FORMS REVISION

This is a summary of the major changes to your policy. No coverage is provided by this summary nor can it be construed to replace any provisions of your policy or endorsements. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

**PLEASE READ YOUR POLICY AND THE ENDORSEMENTS ATTACHED TO YOUR POLICY, CAREFULLY.**

---

## COVERAGE FORM CHANGES

---

### BROADENINGS OF COVERAGE

**REVISION TO AUDIO, VISUAL OR DATA ELECTRONIC EQUIPMENT COVERAGE**
- **CA 00 01 - Business Auto Coverage Form**
- **CA 00 05 - Garage Coverage Form**
- **CA 00 10 - Business Auto Physical Damage Coverage Form**
- **CA 00 20 - Motor Carrier Coverage Form**

Coverage is being extended for ALL electronic equipment that is permanently installed in or upon locations that are normally used by the auto manufacturer, and that reproduces, receives or transmits audio, visual or data signals and which is powered solely from the vehicle's electrical system. This coverage is similarly extended to electronic equipment that is removable from a housing unit, which is permanently installed in or upon locations that are normally used by the auto manufacturer. For electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in or upon locations of a covered auto **other than** those normally used by the auto manufacturer for the installation of such equipment, coverage will be provided up to a limit of $1,000. However, this limit may be increased by attaching optional Endorsement **CA 99 60.**

### REDUCTIONS OF COVERAGE

**REVISION TO AUDIO, VISUAL OR DATA ELECTRONIC EQUIPMENT COVERAGE**
- **CA 00 01 - Business Auto Coverage Form**
- **CA 00 05 - Garage Coverage Form**
- **CA 00 10 - Business Auto Physical Damage Coverage Form**
- **CA 00 20 - Motor Carrier Coverage Form**

Equipment designed solely for the reproduction of sound, and accessories used with such equipment that is permanently installed in a covered auto, but not in or upon locations normally used by the auto manufacturer, will be subjected to a $1,000 sublimit.

### REINFORCEMENTS OF COVERAGE

**REVISION TO THE SUPPLEMENTARY PAYMENTS PROVISION**
- **CA 00 01 - Business Auto Coverage Form**
- **CA 00 05 - Garage Coverage Form**
- **CA 00 20 - Motor Carrier Coverage Form**

The Liability Coverage Supplementary Payments provision and, for **CA 00 20**, Trailer Interchange Coverage, are revised to reinforce that it applies to **court** costs taxed against the insured and **not** to the attorneys' fees or expenses taxed against the insured.

**REVISION TO THE FELLOW EMPLOYEE EXCLUSION**
- **CA 00 01 - Business Auto Coverage Form**
- **CA 00 05 - Garage Coverage Form**
- **CA 00 20 - Motor Carrier Coverage Form**

The liability Fellow Employee exclusion is revised to reinforce that consequential injury claims for damages brought by family members of employees injured by fellow employees are not covered.

**LIMITS OF INSURANCE AND DEDUCTIBLES PROVION**
- **CA 00 05 - Garage Coverage Form**
- **CA 00 20 - Motor Carrier Coverage Form**

The Limits of Insurance and Deductibles provisions contained in Section III - Garagekeepers Coverage in **CA 00 05** and the Trailer Interchange Coverage section of **CA 00 20** are revised to reinforce that the full Limit of Insurance is available should the loss exceed the sum of the deductible and the Limit of Insurance.

## "WEAR AND TEAR" EXCLUSION

**CA 00 01 - Business Auto Coverage Form**
**CA 00 05 - Garage Coverage Form**
**CA 00 10 - Business Auto Physical Damage Coverage Form**
**CA 00 20 - Motor Carrier Coverage Form**

Within Physical Damage Coverage, the "Wear And Tear" exclusion is revised to reinforce that damage due and confined to wear and tear, freezing, mechanical or electrical breakdown and blowouts, punctures or other road damages to tires are excluded unless such loss results from the total theft of a covered auto.

## GARAGE REPORTING REQUIREMENTS

**CA 00 05 - Garage Coverage Form**

The reporting premium basis option under Paragraph **C.5.b** of Section **IV** - Physical Damage Coverage is revised to reinforce that the coinsurance penalty is determined by dividing the total reported value for the involved location by the total actual value at the loss location on the date of the insured's last report. The non-reporting premium basis option under Paragraph **C.5.c.** of Section **IV** - Physical Damage Coverage is revised to reinforce that the coinsurance penalty is determined by dividing the Limit of Insurance by the total actual value at the loss location at the time the loss occurred.

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

**CA 00 05 - Garage Coverage Form**

The employment-related practices portion of the Employee Indemnification And Employer's Liability exclusion is revised to reinforce that the exclusion is intended to apply to any injury caused by the malicious prosecution of a person and any injury-causing event associated with employment, whether it occurs before, during or after employment of that person.

## GARAGEKEEPERS COVERAGE - DEFINITION OF "CUSTOMER'S AUTO"

**CA 00 05 - Garage Coverage Form**

The definition of "customer's auto" is reinforced to expressly provide coverage for autos that are in the care of the garagekeeper without regard to the request or consent of the vehicle's owner.

## FIRE LEGAL LIABILITY COVERAGE

**CA 00 05 - Garage Coverage Form**

The Garage Coverage Form **CA 00 05** exception to the "insured contract" definition in Section **VI** pertaining to indemnification of any person or organization for damage by fire to premises rented or loaned to the named insured, is revised to include the additional phrase "or temporarily occupied by you with permission of the owner".

---

### MULTISTATE ENDORSEMENTS

---

## BROADENINGS OF COVERAGE

### EXISTING OPTIONAL ENDORSEMENTS

**CA 20 02 - Audio, Visual And Data Electronic Equipment Coverage - Fire, Police And Emergency Vehicles (formerly titled Sound-receiving Equipment Coverage - Fire, Police And Emergency Vehicles)**
**CA 99 60 - Audio, Visual And Data Electronic Equipment Coverage Added Limits (formerly titled Audio, Visual And Data Electronic Equipment Coverage)**
**CA 99 61 - Loss Payable Clause - Audio, Visual And Data Electronic Equipment Coverage Added Limits (formerly titled Loss Payable Clause - Audio, Visual And Data Electronic Equipment)**

**CA 99 60** is revised to instruct that the electronic equipment sublimit is in addition to the each "accident" limit shown in the Schedule. The $250 deductible is also removed from the Schedule of **CA 99 60**, as the Physical Damage Coverage deductible that applies to each covered auto, if any, will now apply to losses to such equipment. Similar revisions are made to **CA 99 61** and **CA 20 02** to track the revisions introduced in the underlying policies as mentioned earlier in this summary.

## FIRE LEGAL LIABILITY COVERAGE

**CA 25 10 - Damages To Rented Premises Liability Coverage - Garages**
**CA 25 14 - Broadened Coverage - Garages**

Endorsement **CA 25 10** and Section **III** of Endorsement **CA 25 14** are broadened to include coverage for property damage not caused by fire, to property rented to a named insured for seven or fewer consecutive days.

#### NEW OPTIONAL ENDORSEMENTS

##### CA 23 98 - Trailer Interchange Coverage

This endorsement, developed for private carriers insured under the Business Auto Coverage Form, provides comprehensive, specified causes of loss and collision coverage for non-owned trailers. Limited coverage options for fire and fire and theft (similar to that in **CA 23 13** - Trailer Interchange Fire And Fire And Theft Coverages) are also included.

##### CA 04 45 - Golf Carts And Low-speed Vehicles

This endorsement provides coverage to any scheduled golf cart or low-speed vehicle that is NOT subject to financial responsibility requirements. No endorsement is necessary for vehicles subject to financial responsibility requirements, as such vehicles fall within the definition of an auto in the ISO Commercial Auto Coverage Forms.

### REDUCTIONS OF COVERAGE

#### EXISTING OPTIONAL ENDORSEMENTS

##### CA 99 16 - Hired Autos Specified As Covered Autos You Own

Additional insured liability coverage is being eliminated for the owner and lessor of a covered auto for losses resulting from the negligence of said lessor or owner.

##### CA 20 19 - Repossessed Autos

##### CA 25 02 - Dealers Driveaway Collision Coverage

**CA 20 19** is revised to add language that allows an insurer to reduce its obligation to pay a loss when the inventory value exceeds either the Limit Of Insurance shown in the Schedule or that which was last reported to the insurer. Both **CA 20 19** and **CA 25 02** will also reflect language that is currently contained under the Quarterly or Monthly Reporting Premium Basis within **CA 00 05**, Garage Coverage Form. This language will state that if the first report due is delinquent on the date of a loss, the most an insurer will pay is 75 percent of the Limit Of Insurance shown in the Schedule for the applicable location.

#### NEW OPTIONAL ENDORSEMENTS

##### CA 23 97 - Amphibious Vehicles

This endorsement excludes loss to or resulting from the ownership, maintenance, or use of, any type of amphibious vehicle (whether or not self-propelled). This includes loss to any property or equipment contained in or used with any such vehicle while being launched into, used on or beached from the water.

##### CA 04 42 - Exclusion Of Federal Employees Using Autos In Government Business

This endorsement excludes liability coverage for the United States of America, any of its agencies or any U.S. Government employee for bodily injury or property damage resulting from the operation of an auto that results while the employee is acting within the scope of duty and when Section 2679(c) of the Federal Tort Claims Act requires the U.S. Attorney General to defend the employee in any civil action or proceeding that may be brought for bodily injury or property damage.

##### CA 04 44 - Waiver Of Transfer Of Rights Of Recovery Against Others To Us (Waiver Of Subrogation)

When this endorsement is attached to your policy, the Transfer Of Rights Of Recovery Against Others To Us condition is amended to provide that such condition does not apply to the person or organization shown in the Schedule, but only to the extent that subrogation is waived prior to the accident or the loss under a contract with that person or organization.

### REINFORCEMENTS OF COVERAGE

#### EXISTING OPTIONAL ENDORSEMENTS

##### CA 23 20 - Truckers Endorsement

##### CA 25 08 - Personal Injury Liability Coverage - Garages

##### CA 25 14 - Broadened Coverage - Garages

##### CA 99 37 - Garagekeepers Coverage

##### CA 99 59 - Garagekeepers Coverage - Customers' Sound-receiving Equipment

The Supplementary Payments provision is revised to reinforce that it applies to **court** costs taxed against the insured and **not** to the attorney's fees or expenses taxed against the insured.