UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


K.V.G. PROPERTIES, INC.,

    Plaintiff,

vs.                                                                          Case No. 16-11561

WESTFIELD INSURANCE COMPANY,                 HON. AVERN COHN

    Defendant.

_____/


**MEMORANDUM AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 10)**
**AND**
**DISMISSING CASE**

I. Introduction

This is a property loss insurance case. Plaintiff K.V.G. Properties, Inc. (KVG) is suing defendant Westfield Insurance Company (Westfield) claiming breach of contract and seeking a declaration of coverage. As will be explained, KVG seeks coverage for losses to commercial property caused by tenants growing marijuana, an activity not authorized by KVG.

Before the Court is Westfield's motion for summary judgment. Westfield says that summary judgment is appropriate because (1) KVG has no proof that the damage occurred during the policy period, (2) coverage was properly denied based on exclusions relating to (a) illegal/dishonest acts, (b) unauthorized construction or remodeling and (c) the presence of moisture and humidity. KVG says that the damage was an act of vandalism which is a covered loss. For the reasons that follow, the

motion will be granted.

## II. Background

The relevant facts not in dispute follow:[1]

### A. The Property Units and Insurance Coverage

KVG, a Michigan corporation with its principal place of business in Wixom, Michigan owns three commercial properties located at 42910, 42916 and 42920 Ten Mile Road, Novi, Michigan. The properties can be used for general office or light industrial businesses. Each building is divided into units which KVG generally rents under lease agreements.

Westfield issued a commercial insurance policy to KVG, Policy No. CWP 3449419, effective January 30, 2015 – January 30, 2016 covering the units at the three properties against direct physical loss or damage. During the policy period, KVG had the following lease agreements:

| **Address:** | **Tenant:** | **Lease Term:** |
|---|---|---|
| 42916 Ten Mile Road Units 7 and 8 | John Abdaal | 7-1-2015 to 6-30-2015 |
| 42916 Ten Mile Road Units 9 and 10 | Renee Shammas | 7-1-2015 to 6-30-2015 |
| 42916 Ten Mile Road Units 11 and 12 | Nahed Hamma | 7-1-2015 to 6-30-2015 |
| 42920 Ten Mile Road Units 15, 16 | Brian Yono | 10-1-2012 to 3-31-2014 Addendum, 8-1-2-15 to 7-31-2018 |
| 42920 Ten Mile Road Units 17, 18 | FHM Enterprises | 12-1-2011 to 11-30-2014 Addendum 12-1-2014 to 11-30-2019 |

---

[1] The facts are taken from the parties' Joint Statement (Doc. 17).

2

B. The Loss and Claim

On or about November 2, 2015, KVG informed Westfield that its tenants in units 7, 8, 9, 10, 11, and 12 located at 42916 Ten Mile Road and its tenants in units 13, 14, 15, and 16 located at 42920 Ten Mile Road had damaged the property by using them for to grow marijuana. KVG apparently became aware of this when DEA agents executed a search warrant on the units on October 29, 2015.

Following the raid, KVG, through its shareholder, property manager and representative, Kyriakos "Chuck" Damavoletes, filed eviction actions against the tenants in the affected units because of the damage to the units caused by the marijuana growing operations. KVG eventually obtained judgments for possession and eviction orders for all of the affected units.

KVG says that the tenants caused significant damage to the units by removing walls, cutting holes in the roof, adding HVAC ductwork, and adding gas lines, which requires service/replacement of the heaters and air conditioning units in each unit. KVG estimates the damage as follows: $18,182.98 for repairing the electrical systems, $74,550.00 for repairing the HVAC system, and $418,161.48 for replacing and repairing the units generally.

C. Westfield's Denial

Westfield denied KVG's claim following an investigation. A letter dated January 8, 2016 sets for the reasons for the denial and states in pertinent part:

> Our investigation determined that the damage to your property was the result of modifications made by your tenant. This resulted in long-term exposure to condensation and damage to the electrical and HVAC systems.

The letter also cited several policy exclusions which will be discussed below.

3

III. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In so doing, the Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

IV. Discussion

A. General Principles

In Michigan, "in reviewing an insurance policy dispute [courts] must look to the

4

language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction," the predominant rule being that "an insurance contract must be enforced in accordance with its terms." Henderson v. State Farm Fire & Cas. Co., 460 Mich. 348, 353–354 (1999). A court must "look to the plain language of the insurance policy in determining the scope of coverage ...." Busch v. Holmes, 256 Mich. App. 4, 9 (2003). Although a court strictly construes exclusions in favor of an insured, Auto–Owners Ins. Co. v. Churchman, 440 Mich. 560, 567 (1992), "[c]lear and specific exclusions must be given effect," and "coverage under a policy is lost if any exclusion within the policy applies to an insured's particular claims," Holmes, 256 Mich. App. at 9. "[T]he 'insured bears the burden of proving coverage, while the insurer must prove that an exclusion to coverage is applicable.' " Heniser v. Frankenmuth Mut. Ins. Co., 449 Mich. 155, 534 N.W.2d 502, 505 n. 6 (Mich.1995) (quoting Arco Indus. Corp. v. American Motorists Ins. Co., 448 Mich. 395 (1995) (Boyle, J., concurring) (rev'd on other grounds, Frankenmuth Mut. Ins. Co. v. Masters, 460 Mich. 105 (Mich.1999))).

## B. Policy Period

Westfield first says that summary judgment is appropriate because KVG has not shown that the damage occurred during the policy period. The policy period is from January 30, 2015 to January 30, 2016. Here, Damavoletes testified at deposition that units 7-12 at 42916 Ten Mile Road had been occupied by a former tenant, Luxury Sheets, since about 2012. Tenants Abdaal, Shammas and Hamma took possession of Luxury Sheets' space in 2015. There are no records of the units' condition when Luxury Sheets took possession or when Abdaal, Shammas and Hamma took possession in

5

2015.  Similarly, the tenants in units 15-18 at 42920 Ten Mile Road, Yono and FHM Enterprises, took possession in 2011 and 2012, several years before the policy period began.  There are no records of the condition of the units either before or during these tenancies.  Apparently, KVG never entered the units between 2011 and 2015.

While the record contains scant evidence as to precisely when the damage occurred, given that Westfield has consistently relied on policy exclusions to deny coverage, the Court will assume, without deciding, that the damage to the units commenced during the policy period.

## C.  Vandalism

KVG contends that the damage to the units was vandalism for which coverage is provided.  In other words, KVG says that the exclusions in the policy Westfield now relies on - dishonest/illegal acts, unauthorized construction or remodeling, and the presence of moisture - do not apply.  At oral argument, counsel for KVG conceded that if the Court were to conclude that the damage was not vandalism, then it would likely not prevail.  As such, the Court addresses KVG's argument first.

Michigan appellate courts have defined "vandalism" as "deliberate destruction or damage to private or public property," Acorn Inv. Co. v. Mich. Basic. Prop. Ins. Assn., No. 284234, 2009 WL 2952677 (Mich. App. Sept. 15, 2009).  However, no Michigan court has considered whether damage by a tenant to property from marijuana operations unbeknownst to the landlord is vandalism.

KVG relies on Bowers v. Farmers Ins. Exchg., 99 Wash. App. 41, 991 P.2d 734 (2000).  In Bowers, the court considered whether mold damage caused by tenants growing marijuana in the basement of rental home was covered.  The policy excluded

6

damages caused by mold. The district court determined the damage was caused by "vandalism" and not mold.

Bowers is neither controlling nor persuasive. The policy in Bowers was a homeowners policy, not a commercial policy. The policy also did not contain the exclusions at issue here, particularly an illegal/dishonest acts exclusion to preclude coverage. The court in Bowers was also focused on whether the loss was excluded based on mold or covered based on vandalism. Bowers did not consider the weight of authority which, discussed below, excludes coverage for circumstances similar to this case.

### D. Illegal/Dishonest Acts Exclusion

Westfield says that coverage is excluded under the illegal/dishonest acts provision which denies coverage for:

> 2. h. Dishonest or criminal act by … anyone to whom you entrust the property for any purpose:
> (1) Acting alone or in collusion with others….

In DKE, Inc v Secura Ins Co., No. 278032, 2008 WL 4276481 (Mich. App. Sept. 16, 2008) the Michigan Court of Appeals held this type of exclusion is valid and enforceable. However, the DKE court did not specifically apply the exclusion. Besides arson cases, no court in Michigan or this district has applied this exclusion to the circumstances present. In looking to courts from other jurisdictions, the purpose of the dishonest acts exclusion has been described "to exclude from the risk undertaken by the insurer those losses that arise from the misplaced confidence of the insured in those to whom it entrusts its property." Bainbridge, Inc. v. Calfarm Ins. Co., No. D042362, 2004 WL 2650982 (Ca. Ct. App. Nov 22, 2004).

Putting aside whether the tenants' marijuana operations were legal under Michigan law (of which there is no evidence), it is clear that the operations violated federal law. See 21 U.S.C. §812 (classifying marijuana as illegal substance); 21 U.S.C. §841(a)(1) (imposing penalties for manufacture and distribution). See also 21 U.S.C. §856 (penalizing leasing property for purpose of manufacturing, storing, distributing, or using a controlled substance). Beyond criminal activity, the exclusion also applies to dishonest conduct. KVG says the tenants were supposed to be conducting general office and/or light industrial businesses and KVG did not give the tenants permission to grow marijuana on the property. Moreover, KVG acknowledges that all the alterations to the units to facilitate the marijuana growing operations were done surreptitiously. This suggests that the loss falls under the dishonest/illegal acts exclusion.

Case law from other jurisdictions supports this conclusion. Notably, in United Specialty Ins. Co. v. Barry Inn Realty, 130 F. Supp. 3d 834 (S.D.N.Y. 2015), the district court considered whether damage caused by a commercial tenant who represented to the landlord it would be conducting a legitimate business but instead altered the property to grow marijuana was excluded under a similar illegal/dishonest acts exclusion. The district court held coverage was property denied because the damage was done by someone to whom the landlord "entrusted" the property. The district court also held that the fact the tenant did not disclose its intention to operate a marijuana growing operation was immaterial because the intent of the landlord controlled and the landlord intended to surrender the premises to the tenant. Id. at 842.

Courts have also found the exclusion applicable in the context of other drug operations. In Tualatin Valley Housing Partners v. Truck Ins. Exchg., 208 Or. App. 155,

8

144 P.3d 991 (2006), the court held the dishonest acts exclusion precluded coverage for damage to an apartment owner's building resulting from the manufacture of methamphetamine in one of the apartment units. Similarly, in <u>Neighborhood Investments, LLC v Ky. Farm Bureau Mut. Ins. Co.</u>, 430 S.W.3d 248 (Ky. Ct. App. 2014), the insured leased a house to a tenant who used it to manufacture methamphetamine, which in turn contaminated the house and rendered it uninhabitable. The court held coverage was precluded by the illegal or dishonest acts exclusion.

Here, the leases gave the tenants exclusive possession and control over the units. Damavoletes also confirmed that KVG trusted the tenants to conduct the businesses they represented they were conducting and to comply with their contractually agreed-upon remodeling, and maintenance obligations. Thus, KVG entrusted the units to each of the tenants, trusting that the tenants would abide by the obligations in the leases. The tenants' use of the units to grow marijuana was illegal or at the very least dishonest. Westfield is entitled to summary judgment on the grounds that the damage to the units is excluded under the illegal or dishonest acts exclusion.

E. Unauthorized Construction or Remodeling Exclusion

Westfield also says that the damage to the units is excluded because it was the result of unauthorized construction or remodeling. The Court agrees. The policy excludes damage caused by or resulting from:

> c. Faulty, inadequate or defective:
> * * *
> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> (3) Materials used in repair, construction, renovation or remodeling; or
> (4) Maintenance;
> of part or all of any property on or off the described premises.

There is no dispute that the units were damaged. Included in the record are the reports of two contractors who inspected the units after the pot-growing operations were discovered – Price Heating & Cooling (Price) and Mathews Electric (Mathews). Price reported that some unknown person removed the filters from the units' heaters which allowed the coils to become plugged. This, in turn, required replacement of the coils, exchangers and condensers because new coils use a different type of coolant. Price also observed that the hot water tanks in units 8, 9, and 11 had corroded and rotted out. Mathews observed that as to the interiors of the units, alterations included the removal of interior walls and firewalls, boarding up of windows, installation of additional insulation, wiring, outlets and lighting and HVAC fixtures, and rerouting of HVAC ductwork.

Courts have held the unauthorized construction or remodeling exclusion precludes recovery in similar circumstances. In <u>Mav of Mich., Inc. v. American Country Ins. Co.</u>, 289 F. Supp.2d 873 (E.D. Mich. 2003), for example, the district the court applied a similar exclusion to damages caused by a third party who was managing the insured's bar/restaurant pending its sale and transfer of the liquor license. The management company began remodeling of the interior without the insured's knowledge. After the head of the management company and the insured had a falling out, the manager removed the new equipment and materials from the property and caused damage in the process. The district court held the faulty maintenance, workmanship and remodeling was caused by remodeling and/or renovation, and not vandalism. Thus, the exclusion in the commercial property insurance policy for damage resulting from faulty, inadequate or defective renovation and remodeling applied to

preclude coverage. See also Wider v. Heritage Maintenance, Inc., 14 Misc. 3d 963, 976, 827 N.Y.S.2d 837 (2007) (damages caused by insured's limestone cleaning contractor excluded as both faulty workmanship and faulty maintenance under the policy); Waldsmith v. State Farm Fire & Cas., 232 Cal. App.3d 693, 283 Cal. Rptr. 607 (1991) (damages caused by city's negligent maintenance of water main adjacent to insured building fall squarely under exclusion of inadequacy in workmanship, materials used in repair, or maintenance of any property of any kind whether on or off the premises)

Here, the leases provide that the tenants are responsible for HVAC maintenance, repair as well as any unauthorized alterations. It is undisputed that the alterations performed by the tenants were not authorized and damaged the units, including the HVAC systems. Thus, Westfield is entitled to summary judgment on the grounds that coverage is denied under the unauthorized construction or remodeling exclusion.

F. Repeated Moisture or Humidity Exclusion

Westfield's additional argument that coverage was properly denied because damage to the units was caused by or resulted from the continuous or repeated presence of moisture, condensation or humidity also has merit.

This exclusion provides:

B. 2. We will not pay for loss or damage caused by or resulting from…
* * *
f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

Here, when an engineer inspected the units shortly after the loss, he found standing water, moisture stains on interior surfaces and bio-growth on surfaces. He

determined these conditions were caused by "moisture exposure from elevated moisture … for an extended period of time of one year or more." This opinion is uncontradicted. Westfield is entitled to summary judgment based on this exclusion.

V. Conclusion

For all the reasons stated above, Westfield properly denied coverage for the loss to the units based on policy exclusions. There is no genuine issue of material fact which challenges the Court's conclusion. As such, Westfield's motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.

                                                    S/Avern Cohn
                                                    AVERN COHN
                                                    UNITED STATES DISTRICT JUDGE

Dated: November 8, 2017
      Detroit, Michigan